UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:20-cv-23531-KMM/Becerra

RIONDA PORRO,

      Plaintiff,

v.

KILOLO KIJAKAZI,[1] Commissioner of
Social Security Administration,

      Defendant.

_____/

**REPORT AND RECOMMENDATION
ON CROSS MOTIONS FOR SUMMRY JUDGMENT**[2]

**THIS CAUSE** came before the Court on the Parties' Cross Motions for Summary Judgment.  ECF Nos. [18], [19].  Plaintiff Rionda Porro ("Plaintiff" or "Porro") filed her Motion for Summary Judgment on April 14, 2021 ("Plaintiff's Motion").  ECF No. [18].  Defendant, the Commissioner of Social Security ("Defendant" or "Commissioner"), filed a Motion for Summary Judgment with Supporting Memorandum of Law and Opposition to Plaintiff's Motion for Summary Judgment on May 14, 2021 ("Defendant's Motion").  ECF Nos. [19], [20].[3]  Plaintiff filed a Reply to Defendant's Motion ("Plaintiff's Reply") on May 28, 2021.  ECF No. [21].  The Court must now determine whether the decision reached by the Administrative Law Judge (the

---

[1] Although the case style originally listed Andrew Saul as Defendant, Kilolo Kijakazi is now the Commissioner of Social Security and is automatically substituted as Defendant pursuant to Federal Rule of Civil Procedure 25(d).

[2] This case was referred to the undersigned for all pre-trial, non-dispositive matters, and for a Report and Recommendation on any dispositive matters by the Honorable K. Michael Moore, United States District Judge.  ECF No. [2].

[3] Although the Docket reflects that Defendant filed a separate Response to Plaintiff's Motion for Summary Judgment, ECF No. [20], it is the same document as Defendant's Motion, ECF No. [19].

"ALJ") is supported by substantial evidence and whether the correct legal standards were applied. After a review of the Motions, the record, and all relevant authorities, the undersigned hereby **RECOMMENDS** that Plaintiff's Motion be **DENIED,** and Defendant's Motion be **GRANTED**.

## I.    BACKGROUND

On October 22, 2018, Plaintiff filed a Title XVI application for supplemental security income benefits, and on December 12, 2018, filed a Title II application for social security disability benefits.  R. at 377–81. [4]  Plaintiff filed both applications, alleging a disability onset date of February 19, 2018.  *Id.* at 377.  Plaintiff was born on November 19, 1968 and was forty-nine years old at the time her applications were filed.  *Id.* at 38, 377.  The Social Security Administration ("SSA") initially denied Plaintiff's claims on December 7, 2018 and denied them again upon reconsideration on February 27, 2019.  *Id*. at 253, 258, 268, 276.  Thereafter, Plaintiff requested a hearing which was held on January 10, 2020, in Miami, Florida.  *Id*. at 46, 286.  A vocational expert, Ms. Jeannie Diehl ("Ms. Diehl" or the "VE"), testified at the hearing.  *Id.* at 72.  On January 30, 2020, the ALJ denied Plaintiff's applications.  *Id*. at 39.  Thereafter, Plaintiff requested a review of the ALJ's decision.  *See id.* at 7.  On June 25, 2020, Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council.  *Id.* at 7–10.  Having exhausted all available administrative remedies, and pursuant to 42 U.S.C. § 405(g), Plaintiff filed the instant action.  ECF No. [1].

### A.  The SSA Hearing

Plaintiff was fifty-two years old at the time of the hearing.  *Id.* at 57.  Plaintiff testified that she is unable to work due to her depression.  *Id.* at 61–62.  Although Plaintiff's depression resulted

---

[4] References herein to "R. at __" are to the Social Security transcript, which can be found at ECF No. [17-1].  The page numbers to the transcript referenced herein refer to those assigned by the Court's electronic docketing system as found on the top right corner of the page.

from traumatic childhood experiences, *see id.* at 68, Plaintiff testified that her depression began to intensify in the past fifteen years, causing her to get very nervous and fatigued, and to experience panic attacks. *Id.* at 68–70. Plaintiff testified that she takes psychiatric medications on a regular basis and sees a psychiatrist, Dr. Juan Ortiz ("Dr. Ortiz"), every two months, and another doctor, Dr. John Cosby ("Dr. Cosby"), for pain management. *Id.* at 62–63.

As to Plaintiff's daily routine, Plaintiff testified that she usually stays home with her husband. *Id.* at 70. Plaintiff testified that she is able to cook foods such as "[r]ice and beans, [and] meat." *Id.* at 63. She described her day as consisting of sitting and watching TV, feeding and watching her birds, and shopping for groceries. *Id.* at 63–64, 70. Plaintiff stated that she sometimes cleans the house and visits family with her husband. *Id.* at 64, 70. Plaintiff also testified that she does not need to be reminded to perform activities such as taking a shower or getting dressed. *Id.* Additionally, Plaintiff indicated she does not need reminders to take her medication, as she has "it all jotted down." *Id.*

As to her past relevant work, Plaintiff testified that in the past fifteen years she worked in a meat factory cleaning meat, as a babysitter, and as a house cleaner. *Id.* at 59–61. Specifically, Plaintiff testified that she worked as a meat cleaner for five months in 2007; as a house cleaner from 2006 through 2011; and as a babysitter from 2015 through 2016. *Id.* Based on Plaintiff's testimony, the VE categorized Plaintiff's past relevant work using the Dictionary of Occupational Titles ("DOT") as follows: (1) hand packager, as described in DOT 920.587-018, performed at a "medium" exertion level, with an SVP rating of two; (2) housekeeper, as described in DOT 323.687-014, performed at a "light" exertion level, with an SVP rating of two; and (3) babysitter, as described in DOT 301.677-010, performed at a "medium" exertion level, with a Specific Vocational Preparation ("SVP") rating of three. *Id.* at 72–73.

The ALJ then asked the VE to consider a hypothetical individual with Plaintiff's medical, educational, and vocational profile, who can perform the full range of medium work but has certain limitations. *Id.* at 73. This hypothetical individual could "frequently kneel, crouch, crawl, and stoop"; could "frequently climb ramps and stairs"; could "occasionally climb ladders, ropes, or scaffolds"; could "never be exposed to noxious fumes, odors, or other pulmonary irritants"; could "apply common sense understanding to follow simple, one or two step instructions" (which are limitations consistent with "unskilled, SVP two jobs, with a reasoning level of one"); and could "occasionally interact with supervisors, co-workers, and the public." *Id.* at 73–75. The ALJ asked the VE whether such a hypothetical individual would be able to perform Plaintiff's past work. *Id.* at 74. The VE testified that such a hypothetical individual would be able to work as a housekeeper but would be precluded from working as a hand packager given atmospheric issues. *Id.* In addition, the ALJ asked whether there would be any other available jobs in the national economy that such individual could perform. *Id.* The VE testified that Plaintiff would be able to perform jobs, such as: (1) factory helper, as described in DOT 529.686-034, performed at a "medium" exertion level, with a SVP rating of two, and with 81,000 available positions; (2) machine feeder, as described in DOT 699.686-010, performed at a "medium" exertion level, with a SVP rating of two, and with 29,000 available positions; and (3) farm worker, as described in DOT 402.687-010, with a "medium" exertion level, with a SVP rating of two, and with 323,000 available positions. *Id.* at 75.

Next, the ALJ asked the VE to consider a second hypothetical individual with Plaintiff's medical, educational, and vocational profile. *Id.* at 76. However, in addition to the same limitations as in the first hypothetical, this individual also "requires frequent supervision to perform simple, routine tasks, and requires frequent supervision to make simple, work-related

decisions." *Id.* at 76.  The ALJ asked the VE whether this second hypothetical individual would be able to perform Plaintiff's past work or any other work in the national economy. *Id.*  The VE answered that such an individual would be precluded from all work. *Id.*

Thereafter, Plaintiff's attorney asked the VE how an individual's ability to work would be affected if they had to be absent four times per month. *Id.*  The VE answered that such individual would be precluded from "competitive work." *Id.*  Next, Plaintiff's attorney asked the VE how an individual's ability to work would be affected if such individual had "no useful ability to maintain attention and concentration for a two[-]hour period." *Id.* at 76–77.  The VE answered that such a condition would be work-preclusive. *Id.* at 77.  Finally, Plaintiff's attorney asked how an individual's ability to work would be affected if such individual had "[n]o useful ability to respond . . . appropriately to changes in a routine work setting, or to deal with normal work stress, or to be aware of normal hazards and take appropriate precautions." *Id.*  The VE answered that such an individual would be precluded from all types of work. *Id.*

## B.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).  Plaintiff "bears the burden of proving that [s]he is disabled," and "[s]he is responsible for producing evidence in support of [her] claim."  *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

The ALJ is required to follow a five-step sequential evaluation process to determine whether a claimant is disabled. *See Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015). At step one, the ALJ must determine whether the claimant is "currently engaged in substantial gainful activity"; at step two, the ALJ must determine whether the claimant suffers from "severe"[5] impairment(s); at step three, the ALJ must determine whether the claimant suffers from an impairment that meets, or medically equals, a listed impairment found under 20 C.F.R. pt. 404, subpt. P, app. 1; at step four, the ALJ must determine whether the claimant is able to return to his past relevant work given his Residual Functional Capacity ("RFC");[6] and if not, at step five, the ALJ must determine whether the claimant is able to perform other work as it exists in the national economy, given her age, education, RFC, and work experience. *Id.* While "[a]n affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability[,]" "[a] negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986) (citing 20 C.F.R. § 416.920(a)–(f)). "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516, 1518 (11th Cir. 1985)).

**C. The ALJ's Decision**

On January 30, 2020, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from February 19, 2018. R. at 39. In reaching his decision, the ALJ

---

[5] An impairment is considered "severe" if it significantly limits a person's physical or mental ability to perform basic work activities "for a continuous period of at least twelve months," or is "expected to result in death." 20 C.F.R. §§ 404.1509, 404.1522.

[6] RFC is defined as "the most [a claimant] can still do despite [a claimant's physical and mental] limitations." 20 C.F.R § 404.1545(a).

applied the five-step sequential evaluation process that must be used when considering these types of claims. *Id.* at 29–39; *see* 20 C.F.R. § 416.920(a); *see also Frame*, 596 Fed. App'x at 910. At step one, the ALJ determined that Plaintiff had not engaged in substantial activity since February 19, 2018, the alleged onset date. R. at 31.

At step two, the ALJ determined that Plaintiff suffers from five "severe" impairments: (1) disorders of the spine; (2) depression/bipolar disorder; (3) anxiety/obsessive compulsive disorder; (4) chronic obstructive pulmonary disorder; and (5) hypertensive vascular disease. *Id.* The ALJ found that these medically determinable impairments "result in more than minimal limitations in [Plaintiff's] ability to perform basic work activities." *Id.*

At step three, the ALJ considered the listing requirements and determined that Plaintiff's impairments did not meet or medically equal the severity of any of the relevant listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1.[7] *Id.* Next, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform "medium work as defined in 20 C.F.R. § 404.1567(c)[8] and 416.967(c)[,]" and could "frequently climb ramps and stairs, stoop, kneel, crouch, or crawl"; and could "occasionally climb ladders, ropes, or scaffolds"; and could "never be exposed to noxious fumes, odors, or other pulmonary irritants"; and could "apply common sense understanding to follow simple one or two step instructions" and could "occasionally interact with supervisors, coworkers, and the public." *Id.* at 33.

---

[7] The Listing of Impairments is a predetermined set of "major body systems impairments that [are considered] severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience" that would render an individual disabled. 20 C.F.R. § 416.925(a). An individual's impairment is "medically equivalent to a listed impairment . . . if it is at least equal in severity and duration to the criteria of any listed impairment." *Id.* § 416.926(a); *see also id.* § 416.920(d).

[8] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c).

At step four, the ALJ accepted the VE's testimony and determined that Plaintiff could perform her past relevant work as a housekeeper. *Id.* at 37–38. The ALJ explained that Plaintiff's past relevant work as a housekeeper "does not require the performance of work-related activities precluded by [Plaintiff's RFC]." *Id.* at 37.

Although the ALJ determined that Plaintiff could perform her past relevant work, the ALJ nevertheless continued to step five. *Id.* at 38. At step five, the ALJ determined that Plaintiff could perform other jobs in the national economy, including: (1) a factory helper, DOT 529.686-034, at a medium exertion level, and (2) a machine feeder, DOT 699.686-010, also at the medium exertion level. *Id.* at 39. Finding that Plaintiff could perform her past relevant work as a housekeeper and was also able to perform other jobs in the national economy, the ALJ found that Plaintiff has not been disabled from February 19, 2018 through the date of the ALJ's decision. *Id.*

## II.    STANDARD OF REVIEW

Judicial review of an ALJ's final decision is limited to whether there is substantial evidence in the record to support the ALJ's findings, and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing *Richardson*, 402 U.S. at 401); *see also Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). In reviewing the ALJ's decision, a court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment' for that of the Commissioner." *Matos v. Comm'r of Soc. Sec.*, No. 21-11764, 2022 WL 97144, at *3 (11th Cir. Jan. 10, 2022) (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011)). Instead, so long as the ALJ's findings are supported by

substantial evidence, they are conclusive, and the Court must defer to the ALJ's decision.  *See*

*Crawford v. Comm'r, Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004); *see also Hunter v.*

*Comm'r, Soc. Sec. Admin.*, 808 F.3d 818, 822 (11th Cir. 2015).  Even if the Court finds that "the

evidence preponderates against the Commissioner's findings," the Court must affirm

Commissioner's decision if the decision is supported by substantial evidence.  *See* Crawford, 363

F.3d at 1158–59.  In this respect, "the ALJ has a basic obligation to develop a full and fair record[,]"

given that a hearing before an ALJ is not an adversarial proceeding.  *Graham v. Apfel*, 129 F.3d

1420, 1422 (11th Cir. 1997).  The Court also reviews the ALJ's decision "to determine whether

the correct legal standards were applied."  *Id.*  However, no "presumption of validity attaches to

the [ALJ's] conclusions of law."  *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).

### III.   ANALYSIS

Plaintiff's Motion centers around two arguments.  ECF No. [18] at 16–26.  First, Plaintiff

argues that the ALJ failed to properly consider the medical evidence.  In turn, because the medical

evidence was not properly considered, both the ALJ's finding at step three, that Plaintiff's mental

impairments did not meet or medically equal a listed impairment, and the ALJ's RFC

determination at step four, that she was able to perform "medium" work, were not supported by

substantial evidence.  *See id.* at 16–20, 26–27.   Specifically, Plaintiff argues that the ALJ

improperly discounted the opinion of Plaintiff's treating psychiatrist, Dr. Ortiz, and failed to

consider his treatment notes.  *See id.* at 20–24.  Plaintiff contends that Dr. Ortiz' opinion "must

be given substantial or considerable weight" as a treating physician, and that the ALJ's failure to

do so is error.  *See id*.  Plaintiff also argues that the primary care nurse practitioner records, which

the ALJ considered and found persuasive, "appear to be a rote recitation in a standard format"

whereas Dr. Ortiz's records "document much more significant and long[-]standing

psychopathology[.]" *Id.* at 23.  Because the step three and four findings rely on the ALJ's assessment of the Plaintiff's mental health issues, the failure to properly consider Dr. Ortiz's opinion, according to Plaintiff, would warrant remand.  Plaintiff also argues that the ALJ neglected to consider more recent medical records from Dr. Cosby concerning Plaintiff's lumbar degenerative disk disease, "which argue for a greater degree of limitation." *Id.* at 26.  Here, too, if the ALJ erred in considering Dr. Cosby's evaluation, Plaintiff argues that remand is warranted as substantial evidence does not otherwise support the RFC determination.

Second, Plaintiff argues that the housekeeper job was incorrectly classified as her past relevant work. *Id.* at 24–26.  Plaintiff contends that Plaintiff's "testimony contradicts the Work History Report . . . where [Plaintiff] states she took care of a mom and a kid that [were] a friend of her partner." *Id.* at 24.  Plaintiff argues that any such work "was not performed at [substantial gainful activity] level, not full time and at best constitutes sheltered employment" because she could not recall the specific dates of the work and her partner helped her perform such work. *Id.* at 25.  Plaintiff further claims that "state agency findings . . . consistently, over multiple applications . . . show either no past relevant work or past relevant work as a babysitter, not a housecleaner." *Id.*

In response, Defendant argues that the ALJ's decision was based on substantial evidence and should be affirmed.  ECF No. [19] at 2.  As an initial matter, Defendant contends that, under the current regulatory framework, the ALJ properly considered and weighed the medical opinions in the record. *Id.* at 14–16.  Specifically, Defendant argues that the ALJ is no longer required to give "deference to treating source opinion evidence[,]" and properly evaluated the medical opinion evidence by considering the supportability and consistency of the evidence, as required under the new framework. *Id.* at 8–9, 14–15.  As to Dr. Ortiz, Defendant argues that the ALJ "found Dr.

Ortiz's questionnaire was not persuasive because the opinion . . . was either inconsistent with his examination findings or devoid of a supporting explanation" and was "inconsistent with other evidence in the record." *Id.* at 14.  As to Dr. Cosby, the ALJ found his "opinion to be inconsistent with other evidence in the record." *Id.* at 15.  Defendant also argues that "Dr. Cosby's opinion is essentially an opinion of disability" and the issue of disability is "reserved to the Commissioner, not a medical opinion." *Id.*  Moreover, Defendant contends that the ALJ properly evaluated Plaintiff's past relevant work as a housekeeper. *Id.* at 16.  Defendant notes that it is Plaintiff's burden to show that such work is not past relevant work, and that her testimony at the hearing was that she did housekeeping work from 2006 to 2011, and her earnings records show that the work was in fact substantial. *Id.*  at 16–17.

In Reply, Plaintiff argues that the ALJ must look at the entire record in order to render a decision.  ECF No. [21] at 2.  Further, Plaintiff re-asserts that the ALJ failed to properly consider the medical evidence, re-alleges that the RFC decision is not supported by substantial evidence and re-iterates that Plaintiff's housekeeping work is not past relevant work. *Id.* at 3, 6, 9–14.

### A. The ALJ Correctly Evaluated The Medical Evidence.

As noted above, Plaintiff contends that the ALJ's step three finding and step four RFC determination is not supported by substantial evidence because the ALJ failed to properly consider the medical opinions of two of her doctors.  ECF No. [18] at 16–24, 26–27.  As to the step three analysis, a claimant bears the burden of proving that she meets a listing. *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991).  "To 'meet' a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement." *Wilson,* 284 F.3d at 1224 (citing 20 C.F.R. § 404.1525(a)–(d)).  Moreover, a claimant must meet all the specified medical criteria; if a claimant

has an impairment that meets only some of the criteria for a listing, then the claimant will not qualify for such listing. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).  Under the Code of Federal Regulations, each listing has certain criteria that must be satisfied for a claimant to meet that listing. *See* 20 C.F.R. pt. 404, subpt. P, app. 1.  Those criteria are occasionally divided into multiple categories called "paragraphs." *Id.*  These paragraphs are referred to as paragraphs A, B, C, and so forth. *Id.*  For instance, the listings for "depressive, bipolar and related disorders," (listing 12.04), and "anxiety and obsessive-compulsive disorders," (listing 12.06) have three paragraphs, A, B, and C. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, 12.04, 12.06.  To meet either listing, a claimant must satisfy the requirements of either A and B, or A and C. *Id.*

As to the RFC, the ALJ's assessment must be "based on all relevant medical and other evidence, of a claimant's remaining ability to work despite [a claimant's] impairment." *Castle v. Colvin*, 557 F. App'x 849, 852 (11th Cir. 2014).  In determining a claimant's RFC, "the ALJ must consider all medical opinions in the claimant's case record together with other pertinent evidence." *Duffy v. Comm'r of Soc. Sec.*, 736 F. App'x 834, 836 (11th Cir. 2018) (citing 20 C.F.R. §§ 404.1520(e), 416.920(e)).  "[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in [the ALJ's] decision," however, the ALJ's decision must contain sufficient detail so that the court can determine that the ALJ considered the claimant's medical condition as a whole. *Lewen v. Comm'r of Soc. Sec.*, 605 F. App'x 967, 968 (11th Cir. 2015); *see Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 601–02 (11th Cir. 2017) (noting that although the opinion need not specifically refer to every piece of evidence, it "must contain sufficient detail so that [the court] can conclude that the ALJ considered the claimant's medical condition as a whole in assessing her residual functional capacity").

As an initial matter, effective March 27, 2017, the Social Security Administration implemented new regulations related to the evaluation of medical opinions, which provide, in pertinent part, as follows:

> (a) How we consider medical opinions and prior administrative medical findings. We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources. When a medical source provides one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section). We will articulate how we considered the medical opinions and prior administrative medical findings in your claim according to paragraph (b) of this section.

20 C.F.R. §§ 404.1520c(a), 416.920c(a). Subparagraph (c) provides that the factors to be considered include: (1) supportability; (2) consistency; (3) relationship with the claimant (which includes consideration of the length of treatment relationship; frequency of examination; purpose of treatment relationship; extent of treatment relationship; and examining relationship); (4) specialization; and (5) other factors that tend to support or contradict a medical opinion or prior administrative medical finding. *Id.* §§ 404.1520c(c), 416.920c(c).

Here, given that Plaintiff filed her applications for disability in 2018—after the March 27, 2017 regulations went into effect—the new regulations apply to Plaintiff's case. Pursuant to the new regulations, the Commissioner is "not required to articulate how [he] considered each medical opinion or prior administrative medical finding from one medical source individually." *Id.* §§ 404.1520c(b)(1), 416.920c(b)(1). Instead, the most important factors the Commissioner will consider when determining the persuasiveness of medical opinions are supportability and consistency. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). The regulations state that the Commissioner

will explain how he considered the supportability and consistency factors in the determination or decision. *Id.* Thus, Courts have found that "[o]ther than articulating his consideration of the supportability and consistency factors, the Commissioner is not required to discuss or explain how he considered any other factor in determining persuasiveness." *Freyhagen v. Comm'r of Soc. Sec. Admin.*, No. 3:18-cv-1108-J-MCR, 2019 WL 4686800, at *2 (M.D. Fla. Sept. 26, 2019) (quoting *Mudge v. Saul*, No. 4:18 CV 693 CDP, 2019 WL 3412616, at *4 (E.D. Mo. July 29, 2019)). *See also Torres v. Comm'r of Soc. Sec.*, No. 6:19-cv-1662-Orl-PDB, 2020 WL 5810273, at *5 (M.D. Fla. Sept. 30, 2020) (finding no error where ALJ did not specifically address in the decision any factors other than supportability and consistency).[9]

In spite of substantive changes to the regulations, the current versions "still instruct[ ] an ALJ to weigh all medical opinions in light of the length, purpose and extent of the treatment relationship and frequency of examinations which continues to indicate the importance of treating physicians' opinions–especially where the physician has maintained a longstanding and consistent relationship with the claimant." *Brown v. Comm'r of Soc. Sec*, No. 6:20-cv-840-GJK, 2021 WL 2917562, at *3 (M.D. Fla. July 12, 2021) (citation and quotations omitted). However, an "ALJ need not discuss every piece of evidence in its decision." *Matos*, 2022 WL 97144, at *3 (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)). Further, "[a] medical source's opinion that a claimant is 'disabled' or 'unable to work' is not dispositive of a disability claim because the

---

[9] "Overall, supportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record." *Cook v. Comm'r of Soc. Sec.*, No. 6:20-CV-1197-RBD-DCI, 2021 WL 1565832, at *3 (M.D. Fla. Apr. 6, 2021), *report and recommendation adopted*, No. 6:20-CV-1197-RBD-DCI, 2021 WL 1565162 (M.D. Fla. Apr. 21, 2021).

disability determination is reserved to an ALJ acting on behalf of the Commissioner." *Id.* (quoting *Walker v. Comm'r of Soc. Sec.*, 987 F.3d 1333, 1339 (11th Cir. 2021)).[10]

The undersigned now turns to the ALJ's treatment of the two physicians at issue, Dr. Ortiz, and Dr. Cosby.

### 1. *Dr. Ortiz*

Plaintiff argues that the ALJ improperly discounted the opinion of Plaintiff's treating psychiatrist, Dr. Ortiz. ECF No. [18] at 20–24. Specifically, Plaintiff argues that the ALJ did not mention the contemporaneous treatment notes of Dr. Ortiz, which document "much more significant and long[-]standing psychopathology" than the treating records from Plaintiff's primary care nurse practitioner. *Id.* at 23. Plaintiff contends that the treating records from the primary care nurse practitioner are "rote standard note[s] of normal findings" and that they "cannot constitute substantial evidence to discount the opinion of a treating psychiatrist. *Id.* at 24.

Defendant responds that the ALJ properly evaluated the opinions of Dr. Ortiz. ECF No. [19] at 14. Specifically, Defendant contends that the ALJ evaluated Dr. Ortiz's opinion as it relates to the "supportability" and "consistency" of Plaintiff's medical records, and in accordance with the new regulatory framework for evaluating medical evidence. *Id.* In doing so, Defendant argues that the ALJ properly found that Dr. Ortiz's medical opinions were not persuasive. *Id.*

---

[10] Plaintiff's Reply argues that "some commentators suggest that the treating physician's rule could potentially survive the SSA amendments" and that "[s]everal district court decisions within the [Eleventh] Circuit have declined to rule on this issue, instead remanding on other grounds." ECF No. [21] at 8. Plaintiff's argument is not well-supported, as the Eleventh Circuit has affirmatively recognized the applicability of the new regulatory framework. *See Matos*, 2022 WL 97144, at *4 ("For claims filed on or after March 27, 2017, the SSA's new regulations apply. This new regulatory scheme no longer requires the ALJ to either assign more weight to medical opinions from a claimant's treating source or explain why good cause exists to disregard the treating source's opinion.") (citing 20 C.F.R. § 404.1520c).

In determining whether the ALJ erred in finding that the opinion of Dr. Ortiz was unpersuasive, the undersigned turns to Dr. Ortiz's "Mental Impairment Questionnaire (RFC and Listings)" ("MIQ") that contains the opinion at issue.  The ten-page MIQ is a form prepared for the purpose of submitting a medical opinion to the SSA, and includes, among other things, twenty-five questions that ask the doctor to relate his or her medical findings to the patient's ability to do work-related activities on a day-to-day basis.  *See* R. at 1080–89.  The doctor can check a box as to the patient's abilities as to each category, noting that the patient's ability is either unlimited, good, fair, poor or none ("[n]o useful ability to function in this area").  *Id.* at 1084.  The MIQ also has blanks where the doctor can explain his or her answers.  *Id.* at 1084–89.  Out of twenty-five areas relevant to vocational functioning, Dr. Ortiz responded that Plaintiff had either a poor ability or no ability to function in twenty areas.  *Id.* at 1084–87; *see also id.* at 36.  As the basis for those answers, Dr. Ortiz's written notations state that Plaintiff has "poor attention and [inability] to concentrate" and "severe" issues with "attention and concentration" as the only basis for his answers.  *Id.* at 1085–86.  The ALJ determined that this opinion was not persuasive because it is not well-supported by the contemporaneous treatment notes and is at variance with other evidence of record in material respects."  *Id.* at 36.  Specifically, the ALJ reasoned that (1) Plaintiff's "treatment notes routinely document[ed] normal mental status findings"; (2) Plaintiff's hospital records documented "normal behavior, judgement, and thought content"; and (3) despite Dr. Ortiz's opinion that Plaintiff's limitations were present for several years, Plaintiff's earnings record shows that Plaintiff engaged in substantial gainful activity through 2017.  *Id.* at 36–37.  The ALJ also noted that opinions from 2012 through 2015, including those of Dr. Ortiz, were "not persuasive as they do not relate to the relevant period."  *Id.* at 37.  Based on the undersigned's review of the record, the ALJ's finding as to Dr. Ortiz is supported by substantial evidence.

First, in evaluating the supportability of Dr. Ortiz's opinions, the ALJ noted that Dr. Ortiz's opinions lack support in the record.  *See id.* at 36.  The ALJ's finding is supported by substantial evidence.  In his MIQ opinion, Dr. Ortiz only noted Plaintiff's "poor attention and [inability] to concentrate" and "severe" issues with "attention and concentration," but nothing in the opinion supports that conclusion.  *Id.* at 1085–86.  Moreover, the contemporaneous treatment notes of Dr. Ortiz do not support his findings.  Specifically, of the six[11] treatment notes taken during the relevant time period, only one mentions "difficulties with concentration/indecisiveness," but then offers no basis for the notation, nor does it make any notation at all as to the severity of the condition.  *Id.* at 1039 (indicating in one line that Plaintiff's severe recurrent major depressive disorder is "[e]videnced [b]y . . . difficulties with concentration/indecisiveness").[12]  Notably, none of Dr. Ortiz's records cite to any examination or evaluation conducted as to attentiveness or concentration, nor do they detail what information was provided to Dr. Ortiz by Plaintiff that could be said to form the basis for his opinion.  In short, there is scant evidence in Dr. Ortiz's records to support his conclusion that Plaintiff has attention and concentration issues that render her unable to function in any vocational setting.

Second, as to consistency, the ALJ articulated that Dr. Ortiz's opinions were "at variance with the other evidence of record in material respects."  *Id.* at 36.  The ALJ's conclusion is amply supported by the record.  For example, another physician from Dr. Ortiz's clinic conducted an

---

[11] The treatment notes range from August 2018 to December 2019.  *See id.* at 1098 (August 27, 2019), *id.* at 1099 (May 29, 2019), *id.* at 1038–1040, 1100 (February 26, 2019), *id.* at 1101 (December 28, 2018), *id.* at 1102 (August 10, 2018), *id.* at 1130 (December 6, 2019).

[12] Indeed, the only other notes that even reference concentration or attentiveness not only do so as a cursory reference, but they are also outside of the relevant period.  *See, e.g., id.* at 522–23 (noting Plaintiff was "unable to concentrate[,]" and could not "learn or memorize job instructions or rules in a job setting[,]"on October 21, 2014); *id.* at 1046 (noting "lack of concentration" on January 7, 2015); *id.* at 1060 (noting that attention and concentration are "[i]mpaired" on September 17, 2014).

evaluation of Plaintiff on July 31, 2018—within the relevant period. *See id.* at 123. That psychiatric evaluation notes that Plaintiff "[d]enies feeling distracted or difficulty concentrating" and "[d]enies impaired concentration." *Id.* Although Dr. Ortiz acknowledges this evaluation, he does not address the inconsistent findings. *See id.* at 1102 ("I re[a]d the Psychiatric Evaluation done by a Resident on July 31"). Further, the ALJ noted that the treatment notes of Plaintiff's primary care provider and hospital records consistently demonstrated "normal" findings during the relevant period. *Id.* at 36–37. Finally, the ALJ considered that Dr. Ortiz's opinion that the limitations existed for ten years was in contradiction with Plaintiff's earnings as recent as 2017. *Id.* at 37. As such, the ALJ's finding that Dr. Ortiz's opinion was not persuasive in that it was not consistent with the record is well-supported.

Plaintiff's argument that the ALJ's decision "never looks to or mentions the contemporaneous treatment notes of Dr. Ortiz" is unpersuasive. ECF No. [18] at 23. Indeed, the ALJ does not need to refer to every piece of evidence in its decision so long as the decision is not a broad rejection. Moreover, the ALJ considered Dr. Ortiz's treatment notes from 2012 through 2015, explaining that those notes were not persuasive since they were outside the relevant period. R. at 37. In addition, Plaintiff's reference to other contemporaneous treatment notes that the ALJ did not specifically refer to is unavailing because "the issue is not whether an alternative decision can be supported by the record, but whether *this* decision is." *Bonilla v. Saul*, No. 19-25323-CIV, 2020 WL 9048787, at *5 (S.D. Fla. Oct. 23, 2020), *report and recommendation adopted,* No. 19-CV-25323, 2021 WL 1198296 (S.D. Fla. Mar. 30, 2021) (quoting *Taylor v. Comm'r of Soc. Sec.*, No. 6:13-cv-1598-Orl-DAB, 2014 WL 7273917, at *5 (M.D. Fla. Dec. 19, 2014)) (emphasis in original).

Plaintiff also argues that the ALJ's reliance on Plaintiff's primary care provider, who is a nurse practitioner, "cannot constitute substantial evidence to discount the opinion of a treating psychiatrist." ECF No. [18] at 24. Plaintiff again misses the mark, as the new regulations no longer require that a treating physician's medical opinions be given controlling weight. Instead, all medical evidence is to be weighed using the factors outlined in the regulations. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Here, the ALJ adhered to such regulations and found that Dr. Ortiz's opinion was unpersuasive because it was not well-supported and was inconsistent with other evidence in the record. R. at 36–37. The ALJ supported her position by comparing Dr. Ortiz's opinion with the hospital records from L & C Professional Medical Center in 2017 and 2018. *See id.* During such time, Plaintiff's treating nurse practitioner performed several psychiatric evaluations on Plaintiff, each finding that Plaintiff remained fully oriented; her speech was fluent and clear; her thought process was coherent; her insight was deemed good; her memory and higher cognitive functions remained intact, and that there were no signs of obsessive, compulsive, phobic, or delusional thoughts. *Id.* at 36–37, 751, 756, 761, 766, 773–74, 779, 785–86, 788–89, 794–95, 798–99, 1091–92, 1095. In addition, the ALJ also referenced Plaintiff's emergency room records, which documented Plaintiff's normal behavior, judgment, and thought content. *Id.* at 37, 632, 674. Finally, the ALJ considered the fact that Dr. Ortiz's opinion was inconsistent with the records because, despite Dr. Ortiz's opinion that Plaintiff's limitations were present for several years, Plaintiff continued to engage in substantial gainful activity up through 2017. *Id.* at 37, 1089. *See Matos*, 2022 WL 97144, at *4 ("[T]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.") (quoting 20 C.F.R. § 404.1520c(c)(2)).

In addition, in finding that Plaintiff's mental conditions were not sufficient to meet the listings, nor to limit her RFC any further, the ALJ referred to medical records that spanned from September 2017 (before Plaintiff's disability onset date) through August 2018 (months after Plaintiff's disability onset date). *Id.* at 35.  The ALJ's decision included Plaintiff's September 2017 emergency room records, Plaintiff's February 2018 medical records, and Plaintiff's August 2018 emergency room records. *Id.*  Plaintiff's September 2017 emergency room records demonstrated that Plaintiff had a normal mood and affect, her speech and behavior was unremarkable, and her judgment and thought content remained intact. *Id.* at 632.  The ALJ also noted that Plaintiff's February 2018 medical records documented that Plaintiff did not appear anxious or agitated and denied any depression or suicidal ideations. *Id.* at 35, 565, 570.  The ALJ also included Plaintiff's August 2018 psychiatric examination which revealed similar results as her 2017 examination—specifically that Plaintiff displayed normal behavior, speech, judgment, thought content, and mood and affect. *Id.* at 35, 632.  Finally, the ALJ considered Plaintiff's primary care physician's treatment notes which, upon psychiatric evaluation, documented normal mental status findings. *Id.* at 35.  Specifically, Plaintiff's primary care physician documented that Plaintiff remained fully oriented, her speech was fluent and clear, her thought process was coherent, her insight was deemed good, and there were no signs of obsessive, compulsive, phobic, or delusional thoughts. *Id.* at 35, 751, 756, 761, 766, 773–74, 779.  Indeed, treatment notes from 2019 documented that Plaintiff denied depression, disorientation, disturbing thoughts, and excessive stress. *Id.* at 1090.

Based on the foregoing, the undersigned finds that the ALJ's determination as to Dr. Ortiz's opinion was supported by substantial evidence. *See Strickland v. Comm'r of Soc. Sec.*, 516 F. App'x 829, 831 (11th Cir. 2013) ("We may not reweigh the evidence and decide facts anew and

must defer to the ALJ's decision if it is supported by substantial evidence even if the evidence may preponderate against it.") (citing *Dyer*, 395 F.3d at 1210).

### 2. *Dr. Cosby*

The ALJ found Dr. Cosby's opinion that Plaintiff "was unable to perform even sedentary work . . . not persuasive as it is inconsistent with the overall record." *Id.* at 36. Plaintiff argues that the ALJ's finding is not supported by substantial evidence because the ALJ did not properly consider record evidence because Dr. Cosby's more recent records document lumbar degenerative disk disease, which is more severe than previously documented. ECF No. [18] at 26. Plaintiff cites to her visits with Dr. Cosby on August 20, 2019, October 23, 2019, and November 20, 2019, concerning her back pain. *Id.* at 27. In short, Plaintiff argues that because the ALJ erred in its consideration of Dr. Cosby's opinion, the RFC is not supported by substantial evidence.

Defendant responds that the ALJ properly considered Dr. Cosby's opinion and records, ultimately concluding that his opinions were unpersuasive in light of the "supportability" and "consistency" framework. ECF No. [19] at 15. Specifically, Defendant notes that the ALJ determined that Dr. Cosby's opinion was inconsistent with other evidence in the record, including the notes of Plaintiff's primary care provider. *Id.* Moreover, the Government argues that Dr. Cosby's opinion is one of disability, which is an issue to be resolved by the Commissioner. *Id.*

Plaintiff's argument fails because the ALJ's opinion shows that the ALJ did consider Dr. Cosby's records and opinions, including MRI results, treatment notes, and a Physical RFC Questionnaire, and its conclusion that the opinion was inconsistent with the record is supported by substantial evidence. *See* R. at 35–36. First, contrary to Plaintiff's argument that the ALJ neglected to consider Dr. Cosby's treatment notes from August 20, 2019, October 23, 2019, and November 20, 2019, the ALJ specifically cited to this evidence in its opinion, noting that

"[p]hysical examinations showed limited range of motion but no sensory deficits" and that Plaintiff "reported that her pain level while taking medication was a two." *Id.* at 35; *id.* at 1111 (Dr. Cosby's treatment note on November 20, 2019 noting that sensation was "normal" and range of motion was "limited"); *id.* at 1115 (Dr. Cosby's treatment note on October 23, 2019 noting that sensation was "normal" and range of motion was "limited"); *id.* at 1125 (Dr. Cosby's treatment note on August 20, 2019 noting that Plaintiff's "pain level while taking medication is a 2").

Likewise, although Plaintiff argues that the ALJ's "decision reviewed only a small segment of these medical records and minimizes or mischaracterizes them," ECF No. [21] at 11, the ALJ thoroughly considered Plaintiff's lumbar disorder. Indeed, the ALJ specifically found that one of Plaintiff's severe impairments were from her disorders of the spine. R. at 31. Moreover, the ALJ refers to records as recent as November 20, 2019, where Dr. Cosby includes an assessment of Plaintiff indicating that Plaintiff has lumbar discogenic syndrome and radiculopathy. *Id.* at 35, 1111. The ALJ also reviewed a July 2019 MRI of Plaintiff's lumbar spine, which showed "bulging discs . . . but no evidence of stenosis." *Id.* at 35, 1116–17.

The only records that Plaintiff cites which were not referenced in the ALJ's decision are those from a December 23, 2019 medical visit for her back pain. *See* ECF No. [18] at 26. However, as previously discussed, the ALJ is not required to refer to every piece of evidence in his decision. *Lewen*, 605 F. App'x at 968. Nevertheless, those records are consistent with the evidence considered by the ALJ and her findings. Indeed, although the records show that Plaintiff experienced back pain, "triggered by activities including walking, sitting, and standing," the records also show that Plaintiff's pain was a level 2 with medication, and also refers to the July 2019 MRI that the ALJ considered in his findings. *See* R. at 82–86. Accordingly, the ALJ's findings demonstrate that the ALJ thoroughly considered the evidence of Dr. Cosby.

Second, the ALJ's determination that Dr. Cosby's opinion, as noted in the Physical RFC Questionnaire, was unpersuasive because it was inconsistent with the overall record is supported by substantial evidence. The opinion, found in a three-page questionnaire consisting of ten questions, required Dr. Cosby to either check off certain responses or provide a short response. *See id.* at 1105–07. Dr. Cosby checked boxes noting that Plaintiff could sit for approximately two hours and stand or walk for less than two hours in an eight-hour workday. R. at 1105. Dr. Cosby further opined that Plaintiff would need breaks throughout the day and would need to rest over four times a week before returning to work. *Id.* at 1106. Dr. Cosby indicated that Plaintiff's condition included these limitations for approximately ten years. *Id.* at 1107. However, the ALJ noted that the record evidence "consistently documented normal physical examination findings" of the primary care provider, including "clear lungs, normal heart rate and rhythm, full range of motion, intact strength, and unremarkable gait." *Id.* at 36. In so finding, the ALJ specifically cited to various treatment notes that exhibited such normal findings. *See id.* at 751 (noting "lungs are clear to percussion"; [the heart] rate is normal, the rhythm is regular"; "[r]ange of motion testing reveals no restriction or instability"; "[m]uscle strength testing is 5/5 in all major muscle groups"; "[s]pecial testing of the joints for range of motion, nerve compression, and joint contracture is within normal limits"; and "[t]he gait is normal"); *id.* at 756 (same); *id.* at 761 (same); *id.* at 766 (same); *id.* at 773–74 (same); *id.* at 779 (same); *id.* at 785–786 (same); *id.* at 788–89 (same); *id.* at 794–95 (same); *id.* at 798–99 (same); *id.* at 1095 (same); *see also id.* at 1091–92 (noting "lungs are clear to percussion"; [the heart] rate is normal, the rhythm is regular"; "[r]ange of motion testing reveals no restriction or instability"; "[m]uscle strength testing is 5/5 in all major muscle groups"; "[s]pecial testing of the joints for range of motion, nerve compression, and joint contracture is within normal limits"; and "[l]umbar spine range of motion testing is normal in

extension, flexion and side-bending"), *id.* at 1095 (same).  The ALJ also found Dr. Cosby's opinion inconsistent with the cardiologist's notes, which "recorded a generally normal evaluation" with "largely unremarkable" testing.  *Id.* at 36; s*ee also id.* at 728 (indicating "[r]esults of the nuclear scintigraphy catherization laboratory echocardiogram" resulted in "negative" findings for musculoskeletal issues); *id.* at 805 (indicating results of a "normal" myocardial perfusion scan); *id.* at 832 (indicating "normal rate and rhythm except for slight excessive tachycardia response" and "borderline abnormal stress EKG test due to nonspecific . . . depression and hypertensive blood pressure response to the test").

Finally, the ALJ noted that Dr. Cosby's assessment that the limitations existed for several years was inconsistent with Plaintiff's earning records that show she participated in substantial gainful activity as recent as 2017.  *Id.* at 36.  Indeed, a ten-year inability to work is inconsistent with Plaintiff's earnings of $15,979.89 in 2017.  *Id.* at 391.  Accordingly, the undersigned finds that the ALJ's determination that Dr. Cosby's opinion was not persuasive is supported by substantial evidence.  Indeed, even if Dr. Cosby's opinion is viewed as a medical opinion, rather than an "opinion of disability" as the Government argues, the ALJ committed no error in finding Dr. Cosby's opinion inconsistent with the record.

Moreover, Plaintiff's attempt to challenge the ALJ's decision by referencing other medical evidence that would support a different conclusion misses the mark.  Under the substantial evidence standard, this Court's review is limited to whether substantial evidence supported the ALJ's conclusion.  *Sims*, 706 F. App'x at 602 (acknowledging that "the record contains medical evidence that could support a conclusion that [plaintiff] was unable to perform light work" but noting that the court's review is "limited to considering whether substantial evidence supported the ALJ's conclusion").  As noted above, the ALJ considered Plaintiff's physical impairments,

including those records documenting Plaintiff's spinal impairments.  Plaintiff's attempt to have the Court reweigh the evidence should be rejected.  *See Boros v. Comm'r of Soc. Sec.*, No. 2:17-CV-189-FTM-CM, 2018 WL 4561369, at *7 (M.D. Fla. Sept. 24, 2018 ("The Court will not re-assess conflicting evidence related to Plaintiff's [] impairments, however, because 'when there is credible evidence on both sides of an issue, it is . . . the ALJ, and not the court, who is charged with the duty to weigh the evidence and to determine the case accordingly.'") (quoting *Powers v. Heckler*, 738 F.2d 1151, 1152 (11th Cir. 1984)).[13]

Accordingly, the undersigned finds that the ALJ properly evaluated the medical evidence, including the treatment records and opinion of Dr. Cosby, such that the ALJ's determination that Plaintiff has the physical ability to perform medium work, with the noted exceptions, is supported by substantial evidence.[14]

---

[13] Moreover, the ALJ's decision also thoroughly considered the medical treatment notes and evaluations relevant to Plaintiff's other physical impairments, including her pulmonary disorder and hypertensive vascular disease.  The ALJ found that "during the adjudicative period," Plaintiff was treated at L and C Professional Medical Center and the "treatment notes consistently document[ed] normal physical examination findings."  R. at 34.  Specifically, the ALJ noted that Plaintiff's treatment notes from November 30, 2018 documented that Plaintiff was able to "breathe without difficulty[,]" her "lungs remained clear[,]" and "there was no evidence of crackles, wheezes, rhonchi, stridor, or pleural rubs."  *Id.*; *see also id.* at 751, 756, 761, 766.  In addition, treatment notes from months later again documented that Plaintiff's cardiovascular examination showed normal heart rate and rhythm, with "no murmurs, gallops, rubs, or pitting edema."  *Id.* at 34, 1091, 1095.  Her "[m]usculoskeletal examination [also] revealed [a] full range of motion and strength," and Plaintiff's neurological aspects remained intact.  *Id.* at 34.  Finally, the medical records from August 22, 2018 also document normal physical findings, despite Plaintiff's "complaints of palpitations, headaches, and nausea."  *Id.* at 34, 653, 655–56.  The ALJ also considered Plaintiff's August 2018 myocardial perfusion scan test which documented normal findings.  *Id.* at 34, 805.  The ALJ also noted that Plaintiff's stress test was also unremarkable. *Id.* at 34, 832.  Finally, ALJ's decision also considered Plaintiff's cardiovascular evaluation that was taken on September 6, 2018, noting that although ["t]here was evidence of a murmur . . . . there were no signs of carotid bruits, and her upstroke and runoff were within normal limits."  *Id.* at 35, 727–28.

[14] Plaintiff also includes a cursory citation to medical records from Dr. Bruno Gallo, dated March 26, 2020.  *See* ECF Nos. [18] at 27; [21] at 11. Plaintiff neglects to note that this visit to Dr. Gallo

## B. The ALJ Properly Classified Plaintiff's Past Relevant Work

Plaintiff argues that the ALJ's finding that Plaintiff could return to her past relevant work as a housekeeper is not supported by substantial evidence because Plaintiff's job as a housekeeper "was not performed as competitive employment." ECF No. [18] at 24. Instead, Plaintiff argues that she merely cleaned one house with the help of her partner. *Id.* at 24–25. Plaintiff argues that there is "consistent contrary evidence" in the record that shows that Plaintiff never worked as a housekeeper, such as "state agency decision(s)" and "the Work History Report completed by the claimant where she states she took care of a mom and a kid that was a friend of her partner." *Id.* at 24–26. As such, Plaintiff argues that her housekeeper position was not substantial gainful activity and, at best, constitutes sheltered employment. *Id.*

Defendant argues that the record demonstrates that Plaintiff worked as a housekeeper for five years, from 2006 to 2011, and performed the work as substantial gainful activity. ECF No. [19] at 16. As the only work that Plaintiff performed from 2006 to 2011, Defendant contends that the evidence establishes a presumption that Plaintiff's work as a housekeeper was substantial gainful activity and thus considered her past relevant work. *Id.* at 16–17.

---

occurred *after* the ALJ rendered his decision, and that the Administrative Appeals Judge considered this evidence when denying her request for review. *See* R. at 8 ("You submitted medical records dated March 26, 2020 from [Dr. Gallo] . . .[t]his additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before January 30, 2020."). Because Plaintiff fails to demonstrate that the post-decision records from Dr. Gallo are "chronologically relevant" as opposed to evidence of a "worsening condition" after the ALJ's decision, Plaintiff cannot show, nor does she attempt to argue, that the Administrative Appeals Judge erred in finding that the newly submitted evidence would not change the ALJ's findings. *See Stone v. Soc. Sec. Admin.*, 658 Fed. App'x. 551, 553–54 (11th Cir. 2016) (concluding "that the Appeals Council committed no error in refusing to consider the [new] Records" because claimant failed to demonstrate that the new records (1) are chronologically relevant; (2) relate back to a time on or before the ALJ's decision; or (3) show claimant's condition on or before the ALJ's decision).

At step four, the ALJ must determine whether the claimant is unable to return to her past relevant work given her RFC. *Frame*, 596 F. App'x 908 at 910. A "claimant has the burden of showing that certain work experience is not past relevant work." *Barnes v. Sullivan*, 932 F.2d 1356, 1359 (11th Cir. 1991). Past relevant work is a term of art that describes work that the claimant has performed "within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. § 404.1560(b)(1).

To be substantial, the work activity must involve doing significant mental or physical activities. *Id.* § 404.1572(a). Work activity may be substantial even if done on a part-time basis. *Id.* "Gainful work activity is work activity that you do for pay or profit." *Id.* § 404.1572(b). Moreover, a claimant's monthly earnings will generally indicate whether a claimant is engaging in substantial gainful activity. *See* 20 C.F.R. § 404.1574(b)(3)(i). Indeed, "[i]f [a claimant's] average monthly earnings are equal to or less than the amount(s) determined" under the SGA Earnings Guidelines,[15] the agency "will generally consider that the earnings" show that the claimant has not engaged in substantial gainful activity. *Id.* However, the SSA provides that the agency "will generally consider other information in addition to your earnings if there is evidence indicating that you may be engaging in substantial gainful activity[.]" *Id.* § 404.1574(b)(3)(ii).

Plaintiff has not met her burden of demonstrating that her prior housekeeping work was not past relevant work. First, at the SSA hearing, Plaintiff testified that she worked as a house cleaner from 2006 through 2011. R. at 61. Plaintiff did not offer any testimony that her work was limited in any way. Second, in the Work History Report completed on September 9, 2016, Plaintiff

---

[15] *See* Social Security Administration, PROGRAM OPERATIONS MANUAL ("POMS"), DI 10501.015 *Tables of SGA Earnings Guidelines and Effective Dates Based on Year of Work Activity*, *B. Policy — Table 2 — Nonblind Individuals Only,* https://secure.ssa.gov/apps10/poms.nsf/lnx/0410501015 (last visited Feb. 18, 2022) (hereafter, "SGA Earnings Guidelines").

indicated that she had a job cleaning a house.  *Id.* at 1071.  Plaintiff indicated that "my partner will go with me and help me clean a small house" and that she made $50 per week doing such work, though she did not remember the dates of such work.  *Id.* at 1069–71.  Contrary to Plaintiff's argument that her housekeeping work referred to her caring for "a mom and a kid that was a friend of her partner,"  *see* ECF No. [18] at 24, this description was listed as a separate job from the housekeeping work on her Work History Report.  *See* R. at 1069–71.  Moreover, the reference in the Work History Report, that her partner would go with her, is far from the limiting role she now claims in the Motion.  Third, Plaintiff's earning records support the ALJ's finding that Plaintiff previously worked as a housekeeper.  Although earnings are not dispositive, Plaintiff's earnings for two of the five years as housekeeper support a finding that such work was substantial gainful activity.  Specifically, in 2010 the SGA Earnings Guidelines monthly threshold was $1,000.00, and Plaintiff's yearly earnings were $13,114.00, which equals a monthly average of 1,092.83; and in 2011, the SGA Earnings Guidelines monthly threshold were also $1,000.00, and Plaintiff's yearly earnings were $13,159.00, which equals a monthly average of $1,096.58.  R. at 391; SGA Earnings Guidelines.  Although Plaintiff's earnings were below the threshold for some years,[16] whether work constitutes "past relevant work" depends on whether the work was performed "within the past 15 years," 20 C.F.R. § 404.1560(b)(1), and Plaintiff's earnings from 2010 and 2011 fall within this fifteen-year period.

---

[16] In 2006, Plaintiff's yearly earnings were $8,133.10, which equals a monthly average of $677.76, and the SGA Earnings Guidelines monthly threshold was $860.00; in 2008, Plaintiff's yearly earnings were $10,158.00, which equals a monthly average of $846.50, and the SGA Earnings Guidelines monthly threshold was $940.00; in 2009, Plaintiff's yearly earnings were $9,236.00, which equals a monthly average of $769.67, and the SGA Earnings Guidelines monthly threshold was $980.00.  R. at 391; SGA Earnings Guidelines.

Based on Plaintiff's testimony, the VE described Plaintiff's past relevant work as a housekeeper, and subsequently determined that an individual with Plaintiff's RFC would be able to perform Plaintiff's past relevant work as a housekeeper.  *Id.* at 72–74.  The ALJ then relied on the testimony of the VE to determine that Plaintiff could return to her past relevant work as a housekeeper.  *See id.* at 38.  Plaintiff's argument now is that the ALJ erred because it did not consider evidence that in fact, does not appear to be in this record.  What was in the record about Plaintiff's past relevant work was her Work History Report, which did not describe the job in a manner as limited as she does in the Motion, her earnings records, which showed two years of gainful employment as a housekeeper, and her own testimony that she was a housekeeper.  In sum, Plaintiff cannot satisfy her burden to show that the ALJ's finding that Plaintiff is capable of her past relevant work as a housekeeper was not supported by substantial evidence.[17]

## IV.    RECOMMENDATION

For the reasons stated above, the undersigned hereby **RECOMMENDS** that Plaintiff's Motion, ECF No. [18], be **DENIED**, and Defendant's Motion, ECF No. [19], be **GRANTED**.

## V.    OBJECTIONS

A party shall serve and file written objections, if any, to this Report and Recommendation with the United States District Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation.  Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this

---

[17] In addition, Plaintiff does not take issue with the ALJ's finding that Plaintiff would be capable of performing work as a factory helper or machine feeder.  Indeed, the ALJ considered Plaintiff's "age, education, work experience, and [RFC,]" along with the testimony of the VE, in determining that even if Plaintiff were not able to return to her past relevant work, Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy" in its alternative step five analysis.  R. at 39.

Recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions."  11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

      **DONE AND SUBMITTED** in Chambers at Miami, Florida, on February 18, 2022.

_____

**JACQUELINE BECERRA**
**UNITED STATES MAGISTRATE JUDGE**